## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**NATHAN D. RICHTER, Administrator of the Estate of XANDER CAGE HARRIS-BRUNTMYER,**

   **Plaintiff,**

**v.**

**TRACY NELSON, ET AL.,**

   **Defendants.**

**4:20-cv-00167-CRK-CDL**

## OPINION AND ORDER

Before the Court are motions to dismiss Plaintiff Nathan D. Richter's[1] third amended complaint ("TAC") by Defendants Robin Hatfield ("Hatfield"), Aarika Holt ("Holt"), Jessica Pitts ("Pitts"), and Sheila Lowery ("Lowery") (the "OKDHS Defendants").[2]  See generally Pl.'s Third Am. Compl., Nov. 1, 2023, ECF No. 78 ("TAC"); Def. Hatfield's Mot. Dismiss [TAC], Dec. 5, 2023, ECF No. 82 ("Hatfield Mot."); Def. Holt's Mot. Dismiss [TAC], Dec. 5, 2023, ECF No. 83 ("Holt Mot."); Def. Pitts' Mot. Dismiss [TAC], Dec. 5, 2023, ECF No. 84 ("Pitts Mot."); Def. Lowery's Mot. Dismiss [TAC], Dec. 5, 2023, ECF No. 85 ("Lowery Mot.").  The OKDHS Defendants argue the claims against them in the TAC should be dismissed because they are barred by the statute of limitations, they fail to state a claim, and that the OKDHS

---

[1] Nathan D. Richter appears in this case as the Administrator of Xander's Estate.

[2] The OKDHS Defendants are employees of the Oklahoma Department of Human Services ("OKDHS").  Third Am. Compl. at ¶¶ 10–13, Nov. 1, 2023, ECF No. 78.

4:20-cv-00167-CRK-CDL

Defendants are entitled to qualified immunity and immunity from the state law claims. Hatfield Mot. at 3–16; Holt Mot. at 3–19; Pitts Mot. at 4–20; Lowery Mot. at 3–14. For the following reasons, the OKDHS Defendants' motions are granted with respect to Count I, and the remaining claims are remanded to the District Court of Washington County in the State of Oklahoma.

## BACKGROUND

### I.     Factual Allegations[3]

This case concerns the June 17, 2017, death of 53-day-old infant, Xander Cage Harris-Bruntmyer ("Xander"), at the hands of his foster mother Tracy Nelson ("Nelson") while he was in the custody of Anissa Bedard ("Bedard") and Nelson (the "Nelson home"). TAC at ¶¶ 4–8. Xander was born in April of 2017 and taken into OKDHS custody at the hospital because his biological mother's parental rights over his siblings had been terminated before his birth. Id. at ¶ 57. Xander was then placed by OKDHS into the custody of Nelson and Bedard. Id. On or around June 13, 2017, OKDHS employee Hatfield supervised a visit of Xander's biological parents at the Nelson home. Id. at ¶ 60. Hatfield was responsible for Xander as well as other children in the custody of Nelson and Bedard. Id. at ¶ 56.

During the visit, Xander's biological parents noticed "a small bruise on the side of his head" and reported to Hatfield that "something was wrong with Xander," asking Hatfield if Xander could go to the hospital. Id. at ¶¶ 60–64. Hatfield declined to take

---

[3] Unless otherwise indicated, the facts contained in the factual background are taken from the TAC and assumed to be true for the purpose of this Opinion and Order.

**OPINION AND ORDER - 2**

4:20-cv-00167-CRK-CDL

Xander to the hospital, attributing the bruise "to a mark left by a pacifier" and Xander's inconsolable crying to colic. Id. at ¶ 64. Several days later, Xander "was found unresponsive while in the sole care and custody of Tracy Nelson." Id. at ¶ 65. Despite receiving medical care, Xander died on June 17, 2017, due to "blunt force trauma to the left side of [his] head." Id. at ¶¶ 66–67. Nelson was convicted of Xander's murder. Id. at ¶ 68. Plaintiff alleges in the TAC that: the OKDHS Defendants violated Xander's Constitutional rights under 42 U.S.C. § 1983 in Count I; Nelson, Bedard, and the OKDHS Defendants are liable for intentional infliction of emotional distress ("IIED") in Count III;[4] Bedard is liable for Negligence in Count IV; Nelson is liable for Negligence in Count V; and Nelson is liable for "intentional torts" in Count VI.[5] Id. at 91–122.

The TAC alleges that the OKDHS Defendants were employees with access to the OKDHS database concerning referrals of suspected child abuse. Id. at ¶¶ 10–13, 21. Hatfield oversaw Xander's placement in the Nelson home, and Lowery was her

---

[4] The TAC alleges five total counts against Nelson, Bedard, and the OKDHS Defendants. See TAC at ¶¶ 76–122. The TAC includes the Section 1983 cause of action against the OKDHS Defendants as Count I, and then mislabels the next claim as the "Third Cause of Action" for IIED, despite it being the second claim asserted. Id. at ¶¶ 90–91. For the sake of clarity and consistency, the Court maintains the erroneous label for Plaintiff's claims as labeled in the TAC.

[5] Plaintiff alleges "Intentional Torts Against Tracy Nelson" in Count VI against Nelson. See TAC at ¶¶ 116–121. Plaintiff claims that: "Nelson had a relationship with Xander that imposed an obligation of reasonable conduct upon her," id. at ¶ 116; Nelson "accepted Xander into her home with the obligation to care for him" despite knowledge she lacked "capability to take reasonable care of an infant," id. at ¶ 117–18; "Nelson made harmful and offensive contact with Xander" on June 15, 2017, id. at ¶ 119; "Xander suffered fright and terror due to [Nelson's] actions," id. at ¶ 120; and "[a]s a result of this assault, Xander died" where "Nelson's actions are a proximate cause of Xander's death." Id. at ¶¶ 121–22.

**OPINION AND ORDER - 3**

4:20-cv-00167-CRK-CDL

supervisor. Id. at ¶ 11, 59.  Pitts had investigated child welfare referrals of Nelson and Bedard, and Holt was Pitt's supervisor. Id. at ¶ 12–13, 17, 21, 35, 51.

The TAC alleges Nelson and Bedard were licensed by an agency called TFI as foster parents. Id. at ¶ 16.  OKDHS had placed a number of foster children with Nelson and Bedard through TFI.[6]  Id. at ¶ 15.   Nelson had several referrals for potential child welfare concerns and domestic violence, id. ¶ 17, 18–21, 35, 51, all of which would have been available to OKDHS employees through a database kept in OKDHS. Id. at ¶ 21.  For example, the TAC alleges Nelson was referred for causing a spiral fracture to a child in 2015. Id. at ¶ 31.  Pitts investigated this referral and found it "unsubstantiated." Id. at ¶ 31–32.  In reporting this referral to the district attorney, as required by law, Pitts stated that Nelson had no prior referrals despite having at least four at that point. Id. at ¶ 35.  Holt approved Pitts' investigation without further inquiry herself and also failed to disclose the prior referrals. Id. at ¶ 37.  Neither Pitts nor Holt reported the 2015 incident to law enforcement. Id. at ¶ 38.  Subsequent investigation by law enforcement revealed multiple text messages between Bedard and Nelson concerning the 2015 spiral fracture that were not investigated by Pitts, despite her alleged notice of the messages. Id. at ¶¶ 42–45. Plaintiff alleges that such notice would have alerted Pitts to the dangers of the Nelson household. Id. at 42.

---

[6]  In September of 2016 OKDHS moved responsibility of the Nelson home from TFI to OKDHS.  TAC at ¶ 50.

4:20-cv-00167-CRK-CDL

A different and subsequent referral the following month was also investigated by Pitts.  Id. at ¶ 47.  A caller had alleged abuse by Nelson of the same infant with the spiral fracture and claimed a photo of the abuse existed.  Id.  Pitts investigated this referral but did not make an effort to see the photo or contact the caller.  Id. at ¶ 47–48.  The TAC alleges this investigation was also approved by Holt, who similarly failed to take necessary investigatory steps.  Id.  at ¶ 49.

Another referral concerning the same child with the spiral fracture occurred in December of 2016.  Id.  at ¶ 52.  The child appeared at daycare with bruises, and the daycare provider who made the referral indicated that the child was afraid of Nelson and Bedard when he was picked up.  Id. at ¶ 53.  No action was taken on the referral, no reason was given for the inaction, and the matter was not reported to law enforcement.  Id.  In April of 2017 a different child was removed from Nelson and Bedard's care.  Id. at ¶ 55.

Later that month, Xander was born and placed into the Nelson home.  Id. at ¶ 57.  Hatfield was assigned as his foster care worker.  Id. at ¶ 59.  Plaintiff alleges that Hatfield should have been aware of the nine referrals of the Nelson home and the stressful environment it fostered.  Id.  ¶ 21, 58–59.  In 2017, OKDHS conducted an audit in which it discovered information about the Nelson home that was missing from when the Nelson home was screened by OKDHS.  Id. ¶ at 51.

The TAC alleges that neither Xander's biological parents nor the Administrator had a means to discover the majority of "the information available to the DHS employees that pertain to the placement of Xander in this dangerous home

or of the cause of Xander's injuries and death prior to discovery in the present case."

Id. at ¶ 75.

## II.   Procedural History

Plaintiff initially filed a wrongful death action on behalf of Xander's Estate against Nelson and the State of Oklahoma on behalf of OKDHS on April 18, 2019, in the District Court of Washington County in the State of Oklahoma ("Oklahoma State Court").[7]  Petition, Richter v. Nelson, Case No. CJ-2019-96 (Dist. Ct. Wash. Cnty. Okla. Apr. 18, 2019), ECF No. 96-6 ("First Action").   On July 15, 2019, Plaintiff dismissed the case against the State of Oklahoma on behalf of OKDHS without prejudice, leaving only Defendants Nelson and Bedard.   Not. Dismissal Without Prejudice, Richter v. Nelson, Case No. CJ-2019-96 (Dist. Ct. Wash. Cnty. Okla. July 15, 2019).  On December 20, 2019, Plaintiff voluntarily dismissed the remaining two defendants in the First Action and filed a new case for the wrongful death of Xander in Oklahoma State Court against Nelson, Bedard, OKDHS Defendants Hatfield, Pitts, and Lowery, and other individuals, totaling 48 named defendants.  Petition, Richter v. Nelson, Case No. 2019-281 (Dec. 20, 2019), ECF No. 96-7; see also ECF No. 2-2, ("Second Action").

On April 27, 2020, Plaintiff's suit was removed to this Court.   Notice of Removal at 2, Apr. 27, 2020, ECF No. 2 ("Removal Notice").   On May 4, 2020, Defendant Lesli Blazer, Natalie Clark, Hatfield, and Lowery filed a motion to dismiss.

---

[7]  In considering the OKDHS Defendants' motion to dismiss, the Court takes judicial notice of the filings in case numbers CJ-2019-96 and CJ-2019-281.  Fed. R. Evid. 201; Warnick v. Cooley, 895 F.3d 746, 754 n.6 (10th Cir. 2018).

4:20-cv-00167-CRK-CDL

Mot. Dismiss, May 4, 2020, ECF No. 6.   On June 9, 2020, Plaintiff amended his complaint by adding as new defendants Holt, Raney Baldwin, and John Does 1–10 to the case, mooting the May 4, 2020, motion to dismiss.  Pl.'s First Am. Compl. At 1–18, June 9, 2020, ECF No. 12; Minute Order, Sept. 23, 2020, ECF No. 23.   On July 15, 2020, Hatfield, Pitts, Lowery and other named defendants filed a motion to dismiss the first amended complaint.  Mot. to Dismiss First Am. Compl. At 1, July 15, 2020, ECF No. 19.  On January 20, 2021, Plaintiff moved to amend the first amended complaint, seeking to add OKDHS as a party to the action.  Opposed Mot. to Amend. First Am. Compl., Jan. 20, 2021, ECF No. 26.  The OKDHS Defendants and other named defendants opposed the amendment, arguing that adding OKDHS as a party to this action would be futile because it is immune from suit under the Eleventh Amendment of the United States Constitution.  Resp. in Opp'n to Mot. to Am. First Am. Compl., Feb. 1, 2021, ECF No. 27.  The Court denied Plaintiff's motion to amend for futility on August 4, 2022.  Opinion & Order, Aug. 4, 2022, ECF No. 36.

On September 15, 2022, the Court ruled on the OKDHS Defendants' motion. The Court granted the motion to dismiss with respect to all defendants except Nelson, Bedard, and Hatfield.  Opinion & Order at 31–32, Sept. 15, 2022, ECF No. 41 ("First Dismissal Order").   On September 8, 2023, Plaintiff again moved to amend his complaint, which was granted by the Court.  See Pl. Opp'd Mot. Am. Compl. At 1, Sept. 8, 2023, ECF No. 66; Opinion & Order at 10, Oct. 30, 2023, ECF No. 77.  On December 5, 2023, the OKDHS Defendants filed their motions to dismiss, see generally Hatfield Mot; Holt Mot.; Pitts Mot.; Lowery Mot.; which were fully briefed

**OPINION AND ORDER - 7**

on February 12, 2024.[8]  See Pl.'s Am. Combined Resp. & Obj. to [OKDHS Defs.' Mots.] at 1, Jan. 29, 2024, ECF No. 96 ("Pl. Resp."); [Hatfield's] Reply [Pl. Resp.] at 1, Feb 12, 2024, ECF No. 97 ("Hatfield Reply"); [Pitts'] Reply [Pl. Resp.] at 1, Feb 12, 2024, ECF No. 98 ("Pitts Reply"); [Holt's] Reply [Pl. Resp.] at 1, Feb 12, 2024, ECF No. 99 ("Holt Reply"); [Lowery's] Reply [Pl. Resp.] at 1, Feb 12, 2024, ECF No. 100 ("Lowery Reply").[9]

## JURISDICTION

"The court's function on a Rule 12(b)(6) motion . . . is to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." Broker's Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citation omitted).   A complaint is legally sufficient if it contains factual allegations such that it states a plausible claim for relief on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although a complaint need not contain detailed factual allegations, it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  A claim is facially plausible when the plaintiff pleads factual content allowing the Court to draw the reasonable inference that the defendant is

---

[8]  Plaintiff initially filed his response brief on January 15, 2024, but the OKDHS Defendants "brought to Plaintiff's attention" that the "filed brief needed to be amended." See Pl.'s Unopp. Mot. Am. [Pl. Resp.] at 1, Jan. 26, 2024, ECF No. 93. Plaintiff moved to amend his brief, which was granted by the Court and extended the deadline for the OKDHS Defendants' reply brief. See Order at 1, Jan. 26, 2024, ECF No. 94.

[9]  Neither Nelson nor Bedard have filed any motions or responsive briefing to the filings of any other party.

4:20-cv-00167-CRK-CDL

liable for the alleged misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  When deciding a motion to dismiss, the Court considers the complaint in its entirety, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[10]  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The Court must accept all well-pleaded factual allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff.  Twombly, 550 U.S. at 555.

The Court has jurisdiction over Plaintiff's state claims under supplemental jurisdiction because they arise from the same common nucleus of operative fact as the claims filed under 42 U.S.C. § 1983.  See 28 U.S.C. § 1367; see also United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 725 (1966) ("[regarding supplemental jurisdiction involving federal questions] [t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court.  The state and federal claims must derive from a common nucleus of operative fact") (internal citations omitted).  Where state claims attach to federal claims through a common nucleus of operative fact, the Court is "constitutionally obligated to apply state laws to state claims."  Felder v. Casey, 487 U.S. 131, 151 (1988).

---

[10]  The Court may take judicial notice of "its own files and records, as well as facts which are a matter of public record."  Van Woundenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted."  Tal v. Hogan, 453 F. 3d 1244, 1265 n.24 (10th Cir. 2006) (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

OPINION AND ORDER - 9

4:20-cv-00167-CRK-CDL

## DISCUSSION

The OKDHS Defendants argue that (i) Plaintiff's claims are untimely, (ii) the complaint fails to state a claim upon which relief can be granted,[11] and (iii) Defendants are entitled to qualified immunity.  Hatfield Mot. at 3–16; Holt Mot. at 3–19; Pitts Mot. at 4–20; Lowery Mot. at 3–14.  Plaintiff opposes the OKDHS Defendants' motions.  Pl. Resp. at 4–35.  For the reasons that follow, the OKDHS Defendants' motions are granted with respect to the Section 1983 claims.

### I.    Statute of Limitations

The OKDHS Defendants argue Plaintiff's Section 1983 claims are untimely.[12] Hatfield Mot. at 3–11; Holt Mot. at 19; Pitts Mot. at 20; Lowery Mot. at 14.[13]  Plaintiff argues that his claims in the Second Action relate back to the First Action, and even if they do not relate back, the claims are timely because the statute of limitations was equitably tolled.  Pl. Resp. at 24–33.  For reasons that follow, Plaintiff's Section 1983 claims are barred by the statute of limitations.

---

[11]  In her motion, Hatfield does not assert that Plaintiff has failed to state a claim against her in the TAC.  See generally Hatfield. Mot.  Rather, Hatfield argues that any alleged claims are time-barred or shielded by qualified immunity.  Hatfield Mot. at 3–16.

[12]  As discussed further below, the OKDHS Defendants also reference Plaintiff's state law claims against them; however, because the Court is dismissing the Section 1983 claims, it will not retain jurisdiction of the state law claims and therefore will not address whether those claims are untimely as well.  See 28 U.S.C. § 1367(c).

[13]  Holt, Pitts, and Lowery explain in their motions that they adopt the same reasoning as Hatfield for their challenges to the timeliness of Plaintiff's lawsuit.  See Holt Mot. at 19; Pitts Mot. at 20; Lowery Mot. at 14.  Further citations to the OKDHS Defendants' timeliness argument will be to Hatfield's motion.

**OPINION AND ORDER - 10**

## A.      Relation Back

The OKDHS Defendants allege that the TAC is untimely because it does not relate back to the First Action under Federal Rule of Civil Procedure 15(c). Hatfield Mot. at 4–7. Despite this Court's prior ruling that Plaintiff's claims in the Second Action related back to the First Action, see First Dismissal Order at 29, the OKDHS Defendants argue the Second Action serves as the operative complaint because of the voluntary dismissal of the First Action. Hatfield Mot. at 4–7. Plaintiff counters that the TAC is timely because it relates back to the First Action. Pl. Resp. at 28–31. The OKDHS Defendants are correct, and the Court reconsiders its prior ruling in accordance with Federal Rule of Civil Procedure 54(b) (allowing the Court to revise a ruling sua sponte that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" and thus "does not end the action as to any of the claims or parties").

An action filed under 42 U.S.C. § 1983 is governed by the Oklahoma statute of limitations that coincides with the nature of the constitutional violation. See 12 Okla. Stat. tit. § 95; Hill v. Oklahoma, 399 F. App'x 388, 390 (10th Cir. 2010); Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1988), abrogated in part on other grounds by Iqbal, 556 U.S. at 676; Kalbaugh v. Jones, 807 F. App'x 826, 832 (10th Cir. 2020). Although state law controls the time limitations of a Section 1983 action, federal law controls the accrual of such actions. Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004); Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 632 (10th Cir. 1993). Generally speaking, a cause of action accrues—triggering the limitations

4:20-cv-00167-CRK-CDL

period—when a plaintiff has "a complete and present cause of action" such that he may bring suit. Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer, 764 F.3d 1268, 1275 (10th Cir. 2014) (citing Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action 'accrues'—that is, when the plaintiff can file suit and obtain relief" (internal quotations and citations omitted))).

The statute of limitations is an affirmative defense that is ordinarily raised and addressed in pleadings, rather than on motion. Sierra Club v. Okla. Gas & Elec. Co., 816 F.3d 666, 671 (10th Cir. 2016). Nonetheless, "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." Id. (internal quotation marks and brackets omitted); see also Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030, 1049 (D.N.M. 2016).

A plaintiff may counter a motion to dismiss with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute. Am. Mech. Sols., L.L.C., 184 F. Supp. 3d at 1049. The applicability of tolling often implicates matters outside the pleadings, and thus some courts have indicated that a Rule 12(b)(6) motion will rarely be granted if equitable tolling is involved because review is limited to the complaint. Sender v. Dillow, No. 13-2170-RDR, 2013 WL 12253548, at *2 (D. Kan. Aug. 30, 2013) (citing Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003–04 (9th Cir. 2006)). The Tenth Circuit has not

4:20-cv-00167-CRK-CDL

clarified whether tolling must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Am. Mech. Sols., L.L.C., 184 F. Supp. 3d at 1049; cf. Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954) (holding that a plaintiff must "extricate himself" from a pleading that, on its face, indicates the statute of limitations bars the action by alleging applicability of an exception in the complaint or an amendment).  In any event, where the face of the complaint reveals that the action is beyond the statute of limitations, and there are no allegations in the complaint or response to the motion that would implicate tolling, the complaint may be disposed of on a motion to dismiss.  See Aldrich, 627 F.2d at 1041 n.4.

Here, the federal claims accrued on June 17, 2017, the day that Xander died. See TAC at ¶ 66; Hatfield Mot. at 2.  The TAC reveals that on that date Plaintiff had a "complete and present cause of action" that he could initiate in the courts.  See Alden, 764 F.3d at 1275; see also Huff v. Fibreboard Corp., 836 F.2d 473, 475 (10th Cir. 1987) (construing Okla. Stat. tit. 12 § 1053(A) to find that a wrongful death action accrues on the date of the death of the injured party).  Although more information came to light concerning the circumstances of Xander's death after June 17, 2017, there need not be "conclusive evidence of the cause of an injury in order to trigger the statute of limitations."  See Alexander, 382 F.3d at 1216 (citing Baker, 991 F.2d at 632).  Rather, Plaintiff was put on reasonable notice that wrongful conduct caused Xander's death based on the allegations on the face of the complaint.  See id. (citing Baker, 991 F.2d at 63); see also TAC at ¶¶ 60–66.

4:20-cv-00167-CRK-CDL

Plaintiff filed the First Action in Oklahoma State Court on April 18, 2019, and subsequently amended it on June 17, 2019. <u>See</u> Hatfield Mot. at 2; Pl. Resp. at 26–28. The First Action was voluntarily dismissed on December 20, 2019. Hatfield Mot. at 2; Pl. Resp. at 28. This Second Action was filed in Oklahoma State Court on December 20, 2019, and removed to this Court on April 27, 2020. <u>See</u> Removal Notice at 2; First Dismissal Order at 6. Although this timeline would appear to be beyond the statute of limitations, the Second Action may nonetheless be timely if it relates back to the First Action, or if the statute of limitations was tolled. <u>See</u> Fed. R. Civ. P. 15(c) (explaining relation back); <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005) (explaining equitable tolling). Previously, this Court ruled that the statute of limitations did not bar the actions because the claims in this action related back to the First Action.

> Here, Plaintiff's complaint is timely because, although it was filed beyond the applicable two-year limitations period, the complaint relates back to Plaintiff's earlier filed wrongful death complaint. Xander died on June 17, 2017. Am. Compl. ¶ 62, [Jun. 9, 2020, ECF No. 12]. On April 18, 2019, Plaintiff commenced an action against OKDHS as the defendant but alleged that "DHS employees" carried out conduct resulting in Xander's death. <u>See, e.g.</u>, Petition ¶¶ 7, 10–18, 20, 25, <u>Richter v. Dep't Hum. Servs.</u>, No. CJ-2019-96 (Dist. Ct. Wash. Cnty. Okla. Apr. 18, 2019) ("April 2019 Compl."). The OKDHS Defendants knew or should have known they would be added to the lawsuit but for a mistake in identity, and the complaint serves as constructive notice. <u>See</u> Fed. R. Civ. P. 15(c)(1)(C).

First Dismissal Order at 28. This ruling was incorrect, and the Court corrects it here.[14]

---

[14] A district court has the authority to modify an interlocutory order and may exercise

**OPINION AND ORDER - 14**

4:20-cv-00167-CRK-CDL

By its terms, relation back under Federal Rule of Civil Procedure 15(c) applies to amendments—not newly filed actions. "A proposed amendment cannot 'relate back' to a dismissed complaint." Wandschneider v. Tuesday Morning, Inc., No. 08-CV-522-TCK-FHM, 2011 WL 3319562, at *5 (N.D. Okla. Aug. 1, 2011). A voluntary dismissal without prejudice "leaves the parties as though the action had never been brought." Barone v. United Airlines, Inc., 355 F. App'x 169, 179 n.8 (10th Cir. 2009); Burnside v. Allergan PLC, No. 19-CV-01054-KMT, 2020 WL 1452272, at *1 (D. Colo. Mar. 25, 2020); see also Netwig v. Georgia Pac. Corp., 375 F.3d 1009, 1011 (10th Cir. 2004). Although case law on whether a new action can relate back to a voluntarily dismissed action is scant, Tenth Circuit precedent suggests that it cannot. See Calderon v. Kan. Dep't of Soc. & Rehabilitation Servs., 181 F.3d 1180, 1185 (10th Cir. 1999) (rejecting amendment of a dismissed complaint).

Here, Plaintiff did not amend his First Action; instead, he filed a new, distinct action. Due to his voluntary dismissal, the Court treats the complaint filed on April 18, 2019, as if it had never existed. Barone, 355 F. App'x at 179 n.8. As a result, and because of Rule 15(c)'s inapplicability to newly commenced lawsuits, the earliest this

---

this authority sua sponte. See Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); Been v. O.K. Indus., Inc., 495 F.3d 1217, 1225 (10th Cir. 2007) ("district courts generally remain free to reconsider their earlier interlocutory orders"); Beltran v. InterExchange, Inc., No. 14-CV-03074-CMA-CBS, 2018 WL 1704633, at *2 (D. Colo. Apr. 9, 2018) ("a district court may reconsider its own interlocutory order, sua sponte or on motion, at any time prior to the entry of final judgment pursuant to [Rule] 54(b)"); see also Oracle Oil, LLC v. EPI Consultants, 391 F. Supp. 3d 634, 636 n.3 (E.D. La. 2019) (same).

**OPINION AND ORDER - 15**

action could be considered to have been commenced is on December 20, 2019—the date this Second Action was filed in Oklahoma State Court. <u>See</u> Petition/Complaint filed in [Oklahoma State Court] Against All Defs. By [Plaintiff], Dec. 20, 2019, ECF No. 1.

Thus, the Second Action, filed on December 20, 2019, is untimely. The face of the complaint reveals that Xander died on June 17, 2017, <u>see</u> TAC at ¶ 66; Hatfield Mot. at 2; Pl. Resp. at 26, and it is also undisputed that the statute of limitations for a wrongful death action under Oklahoma law is two years. <u>See</u> Hatfield Mot. at 5; Pl. Resp. at 26. Plaintiff accordingly would have had to file his wrongful death claim on or before June 17, 2019, to avoid being barred by the statute of limitations. <u>See</u> Okla. Stat. tit. 12 § 95(A)(3) (allowing two years for "an action for injury to the rights of another, not arising on contract"). However, Plaintiff did not file the Second Action until December 20, 2019, which is over six months after the statute of limitations expired. <u>See</u> Hatfield Mot. at 5; Pl. Resp. at 26; <u>see also</u> Okla. Stat. tit. 12 § 95(A)(3).

Further, the federal claims against the OKDHS Defendants cannot be maintained by virtue of the Oklahoma savings statute. The OKDHS Defendants state "[it] is also anticipated that Plaintiff will argue that his addition of the 50 new individual defendants in the [Second Action] . . . was saved by virtue of Oklahoma's so-called 'savings statute.'"[15] Hatfield Mot. at 9 (citing Okla. Stat. tit. 12 § 100). The

---

[15] Okla. Stat. tit. 12 § 100 provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of

OKDHS Defendants argue that the savings statute is inapplicable, citing <u>Morris v. City of Sapulpa</u>, No. 10-CV-0376-CVE-TLW, 2010 WL 3733527, at *4–5 (N.D. Okla. Sept. 17, 2010), and <u>Brown v. Hartshorne Pub. Sch. Dist. No. 1</u>, 926 F.2d 959, 962 (10th Cir. 1991), <u>abrogated on other grounds by</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), to support their contention.  Hatfield Mot. at 9–11.  Plaintiff does not invoke or otherwise address Okla. Stat. tit. 12 § 100 applies to his claims.  <u>See generally</u> Pl. Resp.

The OKDHS Defendants are correct.  Similar to both <u>Morris</u> and <u>Brown</u>, the complaint in the Second Action named individuals whose names were not included in the pleadings of the First Action.  <u>Compare</u> First Action at 1–4; <u>with</u> Second Action at 1–6; <u>see also</u> 2010 WL 3733527, at *4–5; 926 F.2d at 962.  Indeed, Plaintiff named the entire OKDHS as a single entity in the First Action, and then named individual OKDHS workers suspected of involvement in Xander's death in the Second Action. Consistent with the <u>Morris</u> and <u>Brown</u>, "the inclusion of a broad entity as a defendant in an early proceeding will not provide a later justification for adding individual members of that body."  <u>See Morris</u>, 2010 WL 333527, at *5 (involving a police department and individual police officers); <u>see also Brown</u>, 926 F.2d at 962 (involving a school board and individual school board members).  Here, Okla. Stat. tit. 12 § 100 cannot operate to save Plaintiff's federal claims in the Second Action against

action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

4:20-cv-00167-CRK-CDL

individuals that were not included in the previously dismissed First Action.[16] Because the Second Action does not relate back to the First Action, the Second Action is untimely unless the statute of limitations was tolled.

## B.   Equitable Tolling

Plaintiff argues that even if this Second Action does not relate back to the First Action, the statute of limitations should nevertheless be tolled, and further, that the applicability of tolling cannot be resolved on a motion to dismiss.  Pl. Resp. at 33.  The

---

[16] Unlike Federal Rule of Civil Procedure 15(c) governing relation back of amended pleadings, Okla. Stat. tit. 12 § 100—governing "limitation of new action after reversal or failure otherwise on the merits"—does not provide for "chang[ing] the party" if the party received notice of the action and should have known that but for a mistake it should have been a defendant.  See Fed. R. Civ. P. 15(c).  Instead, Okla. Stat. tit. 12 § 100 has been interpreted by Oklahoma courts to prohibit addition of new defendants not included or named on the face of the previous complaint, dismissed without prejudice, in a newly filed action.  See, e.g., Morris, 2010 WL 3733527, at *4–5 (prohibiting addition of individual police officers who were not named in the first action against the police department); Brown, 926 F.2d at 962 (prohibiting addition of individual school board members who were not named in the first action against the school board); Nusbaum v. Knobbe, 2001 OK CIV APP 52 at ¶ 9, 23 P.3d 302, 304 (stating that "Brown is consistent with Oklahoma case law regarding [Okla. Stat. tit. 12] § 100" and prohibiting addition of the driver of the vehicle who was not named in first action against the owner of the vehicle in damages suit arising from motor vehicle accident); Garrett v. Downing, 1939 OK 237, 185 Okla. 77 at ¶ 26–27, 90 P.2d 636, 639 (prohibiting addition of corporation that was not named in the first action against individual stockholder).  Rather, for Okla. Stat. tit. 12 § 100 to apply, the newly filed action must add a new plaintiff or involve a nominal change for a substantially similar defendant.  Nusbaum, 2001 OK CIV APP 52 at ¶ 12, 23 P.3d at 305 ("Plaintiff is attempting to add a party defendant . . . . Therefore, the rationale for allowing a change in the party plaintiff does not apply"); Griesel v. Fabian, 1938 OK 589, 84 P.2d 634, 636–37 (allowing addition of the original defendant's executor after the defendant died in the re-filed complaint); Clark v. Phillips Petroleum Co., 1984 OK CIV APP 6 at ¶ 10, 677 P.2d 1092, 1094 (allowing a complaint originally brought against a particular corporation to be re-filed against its successor corporation).  As previously stated, Plaintiff's Section 1983 claims are governed by Oklahoma state statute of limitations, and accordingly Okla. Stat. tit. 12 § 100 must be considered in the Court's statute of limitations analysis.

OKDHS Defendants claim that Plaintiff's suit is not subject to equitable tolling. Hatfield Mot. at 7–11.

As discussed, state law controls statute of limitations and tolling. <u>Alexander</u>, 382 F.3d at 1215 (citing <u>Baker</u>, 991 F.2d at 632). Generally, to be entitled to equitable tolling, a plaintiff must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007). The Tenth Circuit interpreting Oklahoma state law, and in particular the Oklahoma discovery rule, has determined that equitable tolling requires "false, fraudulent, or misleading conduct" before it may be applied to a claim.[17] <u>Alexander</u>, 382 F.3d at 1217. A plaintiff can demonstrate the requisite conduct by alleging facts from which a jury could infer that he or she "has been lulled into inaction" such that they could not have discovered the claim in the exercise of reasonable diligence. <u>Id.</u> (citing <u>Jarvis v. City of Stillwater</u>, 1987 OK 5, 732 P.2d 470).

Here, there is no factual basis either in the complaint or the responsive briefing that would support equitable tolling. Plaintiff fails to allege that the OKDHS Defendants lulled the Plaintiff into inaction. Likewise, Plaintiff's brief fails to apply

---

[17]  The Tenth Circuit has also found that equitable tolling of Oklahoma statutes of limitations may be appropriate if there exists a "legal disability." <u>Alexander</u>, 382 F.3d at 1217. The court in <u>Alexander</u> stated that "[a]lthough the exact definition of this term remains unclear, Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority." <u>Id.</u> Similar to the facts of <u>Alexander</u>, and as is the case here, Plaintiff offers no evidence of any incompetency, and thus the standard is inapplicable. <u>See id.</u>; <u>see generally</u> Pl. Resp.

4:20-cv-00167-CRK-CDL

the instant facts to the standard or invoke any binding authority that might entitle him to the doctrine. See Pl. Resp. at 31–33 (discussing Oklahoma Children's Code and policy and cases from Utah and New Mexico). At no point in this discussion does Plaintiff allege facts in his complaint or even in his responsive briefing that could support a finding that he "has been lulled into inaction" or was the victim of "false, fraudulent, or misleading conduct" in his pursuit of the case. See Pl. Resp. at 31–33; Alexander, 382 F.3d at 1217.

Plaintiff implies he was lulled into inaction on behalf of Xander due to the delayed disclosure that Xander was murdered and the inaccessibility of the OKDHS records. See TAC at ¶ 75; Pl. Resp. at 32–33. In this vein, Plaintiff also seems to imply that the cause of action had not fully accrued. See Alexander, 382 F.3d at 1215; Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). However, Plaintiff's allegations in the TAC and his response motion fail to raise a question of fact as to the date the cause of action accrued and the applicability of equitable tolling. Accepting the allegations of the TAC as true, Plaintiff knew or was put on notice: that Xander was bruised while in the custody of the state, TAC at ¶ 61; that Xander's parents "reported to []Hatfield that something was wrong with Xander" and "asked [her] if Xander could go to the hospital"; id. at ¶ 62–63; that Hatfield dismissed the health concerns and refused to aid or seek treatment for Xander, id. at ¶ 64; and that Xander died soon after. Id. at 66. The TAC establishes that that Xander's death on June 17, 2017, was

**OPINION AND ORDER - 20**

4:20-cv-00167-CRK-CDL

the date that his Section 1983 action accrued.[18]  Thus, without more, Plaintiff fails to
allege facts that infer the applicability of equitable tolling.  Accordingly, his Section
1983 claims in the TAC must be dismissed as untimely.

## II.    Plaintiff's Section 1983 Claims Are Dismissed With Prejudice

Plaintiff's claims against the OKDHS Defendants must be dismissed with
prejudice.  The dates on the face of the TAC allow the statute of limitations to be
properly raised and resolved at the motion to dismiss phase of litigation.  See Radloff-
Francis v. Wyoming Med. Ctr., Inc., 524 F. App'x 411, 413 (10th Cir. 2013) (citing
Aldrich 627 F.2d at 1041 n.4).  The statute of limitations operates to bar untimely
claims, even when those claims might otherwise be valid.  See United States v.

---

[18]  The Tenth Circuit has not clarified whether tolling must be pled with supporting
facts in the complaint or may be merely argued in response to the motion. Am. Mech.
Sols., L.L.C., 184 F. Supp. 3d at 1049.  To the extent that the Court may take notice
of factual allegations raised in the briefing, see id.; cf. Kincheloe, 214 F.2d at 605
(holding that a plaintiff must "extricate himself" from a pleading that, on its face,
indicates the statute of limitations bars the action by pointing to facts which might
show the applicability of an exception in the complaint or an amendment), Plaintiff's
response cuts against any argument that equitable tolling applies to his claims.
Plaintiff concedes in his response brief that Xander's parents knew or were put on
notice that Xander's death might be attributed to misconduct.  Plaintiff states "[t]o
be clear, Xander's parents certainly suspected on the day Xander died that he had
been abused and they wanted to find out what happened." Pl. Resp. at 32.   The
circumstances presented by Plaintiff, accepted as true, illustrate that Plaintiff "knew
of facts that would put a reasonable person on notice that wrongful conduct caused
the harm." See Alexander, 382 F.3d at 1216; Baker, 991 F.2d at 632.  Moreover,
Plaintiff's commencement of the First Action, as discussed in Hatfield's motion and
Plaintiff's response, reveals that he had not been prevented from asserting his rights.
That Plaintiff learned more information at later points concerning the specific details
and events that contributed to Xander's death—including "just how egregious the
[OKDHS Defendants'] carelessness and reckless (sic) was," Pl. Resp. at 34—does not
affect his knowledge or notice that wrongful conduct might have caused the death.
Rather, Plaintiff's initiation of the First Action under a year after Xander's death
bolsters the conclusion that Plaintiff's action had accrued. Id. at 33.

Kubrick, 444 U.S. 111, 125 (1979) ("It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims").  The circumstances of the case require such a result, as statutes of limitations "remain as ubiquitous as the statutory rights or other rights to which they are attached or applicable."  Id.  Accordingly, the OKDHS Defendants' motions must be granted with respect to Plaintiff's Section 1983 claims, which must be dismissed with prejudice.

### III.   The State Law Claims Are Remanded[19]

In the TAC, Plaintiff alleges state law claims against Nelson, Bedard, and the OKDHS Defendants.  TAC at ¶¶ 76–122.  Plaintiff alleges in Count III that the OKDHS Defendants are liable for IIED for their part in Xander's death.  Id. at ¶¶ 91–96.  Plaintiff's remaining claims, against Nelson and Bedard, consist of: negligence against both Bedard and Nelson in Counts IV and V, respectively; and intentional torts against Nelson.  Id. at ¶¶ 97–122.  Although the OKDHS Defendants move to dismiss all of Plaintiff's complaint, including Count III, see Hatfield Mot. at 1, 11; Holt Mot. at 18; Pitts Mot. at 18; Lowery Mot. at 13, the Court need not reach

---

[19] When a case is removed from state to federal court, as here in the Second Action, the federal court "should remand the supplemental claims to state court."  13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567.3 (3d. ed.); see also Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2009) (affirming district court's remand state-law claims to state court after disposing of federal claims); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("In Carnegie-Mellon, the Court found federal courts to have an inherent power to remand removed State claims when the federal claims drop out of the case").

4:20-cv-00167-CRK-CDL

merits of the arguments concerning the state law claims.[20]   Thus, these claims are

remanded back to the Oklahoma State Court.

The Court retains discretion under Section 1367(c)(3) of Title 28 in its exercise

of supplemental jurisdiction over remaining state law claims when the federal claims

that provided original jurisdiction to the Court are dismissed.  28 U.S.C. § 1367(c)(3)

("The district courts may decline to exercise supplemental jurisdiction over a claim

[arising under supplemental jurisdiction] if . . . (3) the district court has dismissed all

---

[20] The OKDHS Defendants' briefing is lacking with respect to the state law claims. For example, Defendant Hatfield fails to offer any argument for why Plaintiff has failed to plead a claim for IIED and moves to dismiss the TAC (apparently in its entirety), Hatfield Mot. at 1; id. at 11 ("the irrepressible truth is that Plaintiff's suit as against Hatfield . . . was untimely filed and must be dismissed"), but then concludes "[t]hus, this action must be dismissed insofar as the Plaintiffs seek relief against Hatfield under Section 1983." Id. at 16.  Defendants Holt, Pitts, and Lowery contain nearly identical arguments, quoting four paragraphs of a Tenth Circuit opinion concerning IIED with two sentences attempting to apply the case to the facts at hand.  See Holt Mot. at 18–19; Pitts Mot. at 18–20; Lowery Mot. at 13–14.  Thus, the OKDHS Defendants have failed to demonstrate entitlement to dismissal on Count III.  See Marcure v. Lynn, 992 F.3d 625, 631 (7th Cir. 2021) (stating that "every circuit court to address this issue—[the Seventh Circuit] included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal"); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists").

To the extent that the OKDHS Defendants address Plaintiff's IIED claim and any applicable statute of limitations, Defendant Hatfield contends that "[i]n Oklahoma, the statute of limitations applied to §1983 actions is the same as that applied to Plaintiff's IIED cause of action—2 years."  Hatfield Mot. at 5.  The two cases cited in the motion to support the conclusion include a Section 1983 case that does not mention IIED and an Oklahoma Supreme Court decision devoid of a discussion concerning IIED statute of limitations.  Id. (first citing Hill, 399 F. App'x at 390; and then citing Computer Publications, Inc. v. Welton, 2002 OK 50, 49 P.3d 732).  Irrespective of the appropriate statute of limitations concerning IIED in Oklahoma, the Court need not address the OKDHS Defendant's argument in light of the remand to the Oklahoma State Court.

**OPINION AND ORDER - 23**

claims over which it has original jurisdiction"); Est. of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004) (explaining that exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c) is one of judicial discretion). A Court considers "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction" when determining if it will maintain jurisdiction over state law claims. Thatcher Enterprises v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990); see Carnegie-Mellon Univ., 484 U.S. at 350 (iterating standard from which Thatcher was derived); Anglemyer v. Hamilton County Hospital, 58 F.3d 533, 541 (10th Cir. 1995) (explaining the Thatcher factors and affirming district court's decision to decline jurisdiction). These factors generally favor that a state court resolves state-law claims when the federal claims have been dismissed before trial, Carnegie-Mellon Univ., 484 U.S. at 350 n.7, especially when the "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain[.]" Gibbs, 383 U.S. at 726–27; see Thatcher, 902 F.2d at 1478 ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary").

The Court declines to exercise jurisdiction over the remaining state law claims against all Defendants because the claims giving this Court original jurisdiction are now dismissed. The factors outlined in Thatcher support remand to the Oklahoma State Court. See 902 F.2d at 1478. No federal claim remains over which this Court has original jurisdiction. The remaining claims concern conduct occurring in Oklahoma that is governed by Oklahoma state law. The case is in an early procedural

phase, and discovery conducted thus far only involves the OKDHS Defendants—against whom no federal claims remain.  <u>See</u> TAC at ¶ 75; Pl. Resp. at 3, 16, 35.  The interests of judicial economy, convenience, fairness, and comity weigh in favor of adjudication of Plaintiff's remaining claims in state court.  <u>See</u> <u>Carnegie-Mellon Univ.</u>, 484 U.S. at 350; <u>see also</u> <u>Tonkovich v. Kansas Bd. of Regents, Univ. of Kansas</u>, 254 F.3d 941, 945 (10th Cir. 2001) (affirming dismissal of pendent state law claims after Section 1983 claim was dismissed); <u>Dahlberg v. Avis Rent A Car Sys., Inc.</u>, 92 F. Supp. 2d 1091, 1111 (D. Colo. 2000) (declining to exercise supplemental jurisdiction where the federal claims were dismissed); <u>Salazar v. San Juan Cnty. Det. Ctr.</u>, 301 F. Supp. 3d 992, 1002 (D.N.M. 2017) (same); <u>Gorenc v. Proverbs</u>, 462 F. Supp. 3d 1137, 1156 (D. Kan. 2020) (same).  Accordingly, Plaintiff's remaining state law claims are remanded to the Oklahoma State Court.

## CONCLUSION

Plaintiff's federal claims are barred by the statute of limitations.  It is unnecessary for the Court to consider Defendants' remaining arguments regarding the failure to state a claim and qualified immunity with respect to Count I.  The Court chooses not to retain jurisdiction over the supplemental state law claims under 28 U.S.C. § 1367(c), and therefore it is unnecessary to address Plaintiff's claims involving IIED, negligence, and "intentional torts" under Oklahoma state law contained in Counts III–VI of the TAC.  Accordingly, the remaining claims are remanded to the Oklahoma State Court.

Therefore, it is

4:20-cv-00167-CRK-CDL

**ORDERED**, that Hatfield's motion to dismiss, <u>see</u> ECF No. 82, is granted with respect to Count I in the TAC; and it is further

**ORDERED** that Holt's motion to dismiss, <u>see</u> ECF No. 83, is granted with respect to Count I in the TAC; and it is further

**ORDERED** that Pitts' motion to dismiss, <u>see</u> ECF No. 84, is granted with respect to Count I in the TAC; and it is further

**ORDERED** that Lowery's motion to dismiss, <u>see</u> ECF No. 85, is granted with respect to Count I in the TAC; and it is further

**ORDERED** that Plaintiff's first cause of action contained in Count I in the TAC, alleging violation of Xander's civil rights against Hatfield, Lowery, Pitts, and Holt, is dismissed with prejudice; and it is further

**ORDERED** that, pursuant to Local Rule 58 of the Northern District of Oklahoma, the Clerk of Court shall enter judgment as set forth above, **REMAND** Plaintiffs' state law claims contained in Counts III–VI in the TAC to the District Court of Washington County in the State of Oklahoma, and **TERMINATE** this case on the Court's docket.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:     March 28, 2024
            New York, New York

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 26**